IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FIRESTONE LASER & MANUFACTURING LLC, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL BRISTOW, <br><br> Defendant. | CASE NO. 4:21-CV-01772-AMK <br><br> MAGISTRATE JUDGE AMANDA M. KNAPP <br><br> **MEMORANDUM OPINION AND ORDER** |

Pending before the Court is a Motion for Judgment on the Pleadings ("Motion") filed by Defendant Michael Bristow ("Bristow") pursuant to Fed. R. Civ. P 12(c). (ECF Doc. 18.) Plaintiff Firestone Laser & Manufacturing, LLC ("Firestone") filed a brief in opposition (ECF Docs. 19, 20) and Bristow filed a reply (ECF Doc. 22). For the reasons that follow, the Court DENIES the Motion for Judgment on the Pleadings (ECF Doc. 18).

**I. Background**

This action was removed from state court in September 2021. (ECF Doc. 1.) Firestone filed a First Amended Complaint in February 2022 (ECF Doc. 14), and Bristow filed an Answer (ECF Doc. 15). The present Motion was filed in May 2022. (ECF Doc. 18.)

**A. Firestone's First Amended Complaint**

Firestone alleges that Bristow engaged Firestone's services "for the engineering, design and production of custom truck beds" and "entered into a contract in which Firestone would design, engineer and produce customized truck beds for purchase by Bristow." (ECF Doc. 14, ¶¶ 2-4, p, 1.) Relevant to this Motion, Firestone alleges that it contracted with Bristow personally

1

and with "Bristow Beds," which Firestone alleges to be "a registered fictitious name with the Missouri Secretary of State and . . . the business name used by Bristow." (*Id.*, ¶ 2, p. 1.) Firestone further alleges that Bristow "made numerous trips to Firestone's facility in Columbiana, Ohio, to meet with various Firestone personnel, and at one point personally drove to Firestone's place of business . . . in order to take possession of five customized truck beds ordered by Bristow and produced by Firestone." (*Id.*, ¶ 5, p. 2.)

Firestone alleges that it committed its engineers and employees to design, engineer, develop, and produce a working custom truck bed for sale to Bristow, which could then be sold to customers of Bristow or Bristow Beds. (*Id.*, ¶¶ 13-17, pp. 2-3.) Even though Firestone performed all requested services, Bristow allegedly refused to pay Firestone for the services and components it provided. (*Id.*, ¶¶ 18, 23, 27-28, pp. 3-4.) On this basis, Firestone has asserted claims for breach of contract, quantum meruit, and unjust enrichment. (*Id.*, ¶¶ 8-30, pp. 2-4.) Firestone has also asserted claims for breach of contract and account in connection with five truck beds that were delivered by Firestone but alleged by Bristow to be damaged or non-conforming. (*Id.*, ¶¶ 31-40, pp. 4-5.) In total, Firestone seeks damages totaling $408,627.71 from Bristow and "Michael Bristow dba Bristow Beds." (*Id.*, pp. 5-6.)

Attached to its First Amended Complaint, Firestone provided: (1) a purchase order dated 3/31/20 from "Bristow Beds," listing Bristow as "Requisitioner," ordering five truck beds from Firestone for $90,000 (ECF Doc. 14-2); (2) an invoice dated 6/30/20, made out to Bristow for five forklift truck beds, for a total cost of $90,000 (ECF Doc. 14-3); and (3) an invoice dated 10/22/20, made out to Bristow for engineering / development, components, materials, labor, and production fixtures, for a total cost of $318,627.71 (ECF Doc. 14-1).

### B. Bristow's Answer

In Answer, Bristow asserted that the two defendants named in the First Amended Complaint – Michael Bristow and Michael Bristow dba Bristow Beds – are the same person, without waiving his position that Bristow "was not personally doing business as Bristow Beds." (ECF Doc. 15, p. 1.) Instead, Bristow alleges that "'Bristow Beds' is a registered fictitious name of non-party Big Hat Investments, LLC," and "at all times Bristow was acting as a representative of Big Hat Investments, LLC, which was doing business as Bristow Beds." (*Id.*, ¶¶ 2, 5, pp. 2; *see also id.*, ¶¶ 9, 16, 21, pp. 3-4.) Among his affirmative and other defenses, Bristow asserts that Firestone's claims fails to state a claim against him upon which relief may be granted and fails to name the proper party-defendant. (*Id.*, ¶¶ 43-44, p. 6.)

### C. Motion for Judgment on the Pleadings

Bristow subsequently filed the present Motion, asserting that Firestone failed to plead sufficient facts to establish that Bristow can be held personally liable for the claims asserted in the First Amended Complaint. (ECF Doc. 18, p. 1.) Instead, he argues that the "pleadings conclusively demonstrate that (1) Firestone *knew* that Michael Bristow was acting as an agent during all relevant times; and (2) Firestone knew the *identity* of Michael Bristow's principal, i.e., Bristow Beds." (*Id.* (emphasis in original).) In support, he attaches the following documents: (1) certified Articles of Organization for Big Hat Investments, LLC ("Big Hat") (ECF Doc. 18-1); (2) a certified State of Missouri Registration of Fictitious Name dated 12/18/19, registering "Bristow Beds" as the fictitious / dba name for Big Hat (ECF Doc. 18-2); and (3) patent paperwork dated 6/30/16 for a "Vehicle Mounted Fork Lift and Method" invented by Michael W. Bristow and Jeffrey D. Marsh and assigned to Big Hat (ECF Doc. 18-3).

3

## II. Analysis

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings "generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)). When ruling on such a motion, "a district court 'must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief.'" *Engler v. Arnold*, 862 F.3d 571, 574-75 (6th Cir. 2017) (citations omitted).

To survive a Rule 12(c) motion, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 575 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Mere labels and conclusions are not enough; the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). In reviewing a 12(c) motion, "a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to [a] motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citing *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015), *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

Here, Bristow contends that judgment on the pleadings is warranted because he was acting at all times as the agent of a disclosed principal, and therefore cannot be held personally

liable under Ohio law for any claims asserted against him in the First Amended Complaint. (ECF Doc. 18, p. 8.) In support, he argues that both Firestone's allegations and the Purchase Order attached as Exhibit B to the First Amended Complaint "demonstrate[] that Firestone was aware that Michael Bristow was not doing business with Firestone in his individual capacity, but as an agent of a business entity – Bristow Beds." (*Id.* at pp. 8-9 (citing ECF Doc. 14-2).) Further, he argues that Firestone "was put on notice" that the true identity of "Bristow Beds" was Big Hat Investments, LLC, as established by the public records that were attached to the present Motion. (*Id.* at pp. 9-12 (citing ECF Doc. 18-2).)

Firestone points out in response that the Purchase Order attached to the First Amended Complaint does not reference Big Hat Investments, LLC in any way, and refers only to "Bristow Beds." (ECF Doc. 20, p. 4-5.) Firestone thus argues that the Purchase Order did not put it on notice that Bristow was acting as an agent of Big Hat. (*Id.*) Because Bristow did not explicitly disclose his agency relationship with Big Hat, Firestone argues that it may be able to prove a set of facts that would entitle it to relief against Bristow personally, making judgment on the pleadings improper. (*Id.* at pp. 5-6.)

In assessing whether an agent may be held personally liable, Ohio courts have outlined the standard using the following four categories: (1) an agent acting for a "disclosed principal" is generally not personally liable; (2) an agent acting for a principal who is "only partially disclosed" is a party to the transaction and liable; (3) an agent acting for an undisclosed principal is liable, but if the principal is discovered it may be held liable instead; and (4) an agent acting for "a fictitious or nonexistent principal" or principal "without legal capacity or status" is liable as a party to the transaction. *See Plain Dealer Publ'g Co. v. Worrell,* 178 Ohio App. 3d 485,

5

488-89 (Ohio Ct. App. 2008); *James G. Smith & Assoc., Inc. v. Everett*, 1 Ohio App.3d 118, 120-121 (Ohio Ct. App. 1981).

Bristow argues that the pleadings demonstrate he was a "disclosed principal," under the first category of the standard, and therefore cannot be held personally liable for Firestone's claims as a matter of law. (ECF Doc. 18, pp. 1, 8.) Firestone responds "[t]o the extent Bristow disclosed any agency, . . . the principal could only have been partially disclosed," under the second category of the standard, and Bristow would therefore be "held to be a party to the transaction and liable to third parties." (ECF Doc. 20, p. 8 (citing *Everett*, 1 Ohio App.3d at 120).) The parties' arguments rely in large part on the conflicting findings in two Ohio appellate court decisions, *Everett*, 1 Ohio App.3d 118, and *Plain Dealer*, 178 Ohio App. 3d 485.

In *Everett*, on which Firestone relies, the court reversed the dismissal of a complaint against an agent who had entered business dealings on behalf of "The Clubhouse" without disclosing that The Clubhouse was actually a dba for the corporation Dale F. Everett Company, Inc. *See Everett*, 1 Ohio App.3d 118. Construing the evidence most favorably for the plaintiff, the court found the "plaintiff knew that an agency existed, but did not know the identity of the principal, Dale F. Everett Company, Inc.," and was therefore "dealing on behalf of a partially disclosed principal or a principal without legal capacity or status." *Id.* at 121. The court noted that the judgement of the trial court was "consistent with a determination that Dale F. Everett Company, Inc., was a partially disclosed principal." *Id.*

In *Plain Dealer*, on which Bristow relies, the court reversed a finding of agent liability on summary judgment where the agent had disclosed that she was acting on behalf of "WRL Advertising," the trade name of the entity Wingfield, Bennett, & Baer, L.L.C. *See Plain Dealer*, 178 Ohio App. 3d 485. Focusing on the fourth category of Ohio's agency standard – whether an

6

agent was acting for "a fictitious or nonexistent principal" – the court found the agent "was not acting on behalf of a fictitious entity or an entity that does not exist in Ohio, but rather that WRL Advertising was a fictitious *name* for Wingfield, Bennett, & Baer, L.L.C." *Id*. at 491 (emphasis in original). The court acknowledged the prior holding in *Everett*, but "decline[d] to follow its application of the law to the instant facts" and instead found "a distinction between a fictitious *name* and a fictitious or nonexistent *principal*." *Id.* (emphasis in original). The *Plain Dealer* court did not explicitly hold that disclosure of the trade name alone was sufficient to fully disclose the principal under the first category of Ohio's agency standard – rather than amounting to a partial disclosure under the second category – so any finding to that effect may only be presumed or implied from the result.

In applying Ohio's agency standard, some courts have relied on *Everett* to find that the disclosure of a fictitious trade name alone was not sufficient to fully disclose an actual principal of a different name. *See, e.g., Huskin v. Hall*, No. 2011-T-0048, 2012 WL 553136 (Ohio Ct. App. Feb. 21, 2012) (reversing summary judgment for agent, finding agent may be subject to personal liability for partial disclosure of principal where he disclosed fictitious dba House Medic Handyman Service but did not disclose actual principal Hall's Hauling, Ltd.); *Covert v. Kanieski*, No. 2010-G-2993, 2011 WL 3655181 (Ohio Ct. App. August 19, 2011) (upholding judgment for personal liability of agent who disclosed various trade names, but did not disclose the existence of a corporation for whom she was operating as an agent).

Other courts have cited to *Plain Dealer* in reversing judgment against agents who disclosed a fictitious trade name instead of the legal entity name, finding based on the facts in evidence that personal liability was not supported. *See, e.g., M. Steel, Inc. v. Seltzer*, No. 95336, 2011 WL 2112682 (Ohio Ct. App. 2011) (finding evidence strongly indicated plaintiff was put

7

on notice it was dealing with the entity "Parkshill Steel Corp.," rather than the agent personally, when all billings and account information were in the name "Parks Hill Steel"); *VP Consol. Holdings, Inc. v. Hunt*, No. E-08-025, 2009 WL 641427 (Ohio Ct. App. 2009) (finding "mere use of 'HCI' instead of 'HCCI'" did not render agent personally liable where record showed he represented a legally registered principal, nothing in the record suggested use of the name HCI was an attempt to hide the identity of HCCI or perpetrate any deception or fraud, and plaintiff knew the agent was the president of a company that operated for the purposes at issue).

While courts have taken different approaches in assessing the personal liability of specific agents who disclosed a trade name but not the name of the actual principal, the cases do consistently reflect that the determination requires a fact-specific inquiry. This is consistent with Ohio courts' recognition that "[t]he issue of whether or not an agency relationship and the identity of the principal were disclosed or known to a third party is a question of fact." *Admin Net Tech LLC v. Med. Imaging Diagnostics, LLC*, No. 18 MA 0111, 2019 WL 4231882, *6 (Ohio Ct. App. August 23, 2019) (citation and quotation marks omitted); *see also Wahab Janitorial Servs. v. P.M. Grp. Mgt.*, 161 Ohio App.3d 632, 637 (Ohio Ct. App. 2005) (finding sufficient evidence to create a genuine issue of material fact as to whether an entity was an undisclosed principal, finding "[t]he disputed status of the principal must be determined only after considering all the factual evidence at trial").

Accepting all of the factual allegations as true, the record reflects that Bristow personally contacted Firestone to engage its services and entered into a contract with Firestone. (ECF Doc. 14, ¶¶ 3-4, p. 1.) He made numerous trips to Firestone's facility, met with Firestone personnel, and personally traveled to Firestone's place of business to take possession of five customized truck beds. (*Id.* at ¶ 5, p. 2.) Before taking possession of the truck beds, Bristow submitted a

8

purchase order to Firestone. (*Id.* at ¶¶ 32-34, p. 4.) The purchase order prominently features the trade name "Bristow Beds," identifies the business website as "BristowBeds.com," provides for shipment to "Bristow Beds" at a specified business address, and lists Michael Bristow as the "Requisitioner." (ECF Doc. 14-2.)

In support of the present Motion, Bristow has provided public records establishing that Bristow Beds is a registered fictitious name for Missouri limited liability company Big Hat Investments, LLC. (ECF Docs. 18-1, 18-2.) But Firestone correctly points out that the purchase order attached to the First Amended Complaint does not mention Big Hat Investments, LLC. (ECF Doc. 20, p. 4-5.) And while the First Amended Complaint does allege that "Bristow Beds" is a registered fictitious name with the Missouri Secretary of State, it does not go so far as to indicate that Firestone was aware of the fictitious name registration at the time of the transactions in question. (ECF Doc. 14, ¶ 2, p. 1.)

The Southern District of Ohio considered a similar situation in *Olde Town Medications & Sundries, LLC v. Feigenbaum,* No. 1:08-CV-17, 2008 WL 11350339 (S.D. Ohio Apr. 25, 2008), where an individual moved to dismiss a complaint against him under Federal Rule of Civil Procedure 12(b)(6), asserting that he signed the contracts at issue only as an agent of four nursing homes. *See Feigenbaum*, 2008 WL 11350339, at *1. Because the complaint alleged that the defendant was acting for himself and signed the contracts as a dba, and because the contracts referred to the facilities "without [their] LLC designation[s]," the court construed the complaint in the light most favorable to the plaintiff to find that the allegations "suggest[ed] that Plaintiff operated under the assumption that no agency relationship existed or, perhaps, that Defendant did not fully disclose his principal." *Id.* at * 3. Assuming that the allegations of the complaint

9

were "true (even if doubtful in fact)," the court found the plaintiff had stated a cause of action. *Id.*

Here, construing the First Amended Complaint in the light most favorable to Firestone, the Court similarly finds Bristow has not met his burden to demonstrate that Firestone "can prove no set of facts in support of [its] claim[s] that would entitle [it] to relief." *Engler*, 862 F.3d at 574-75.  Applying the *Iqbal* standard, the Court finds that the allegations of the First Amended Complaint contain sufficient factual content to support a reasonable inference that Bristow was acting as the agent of a principal that was "only partially disclosed" and could therefore be subject to personal liability under Ohio law.  *See Everett*, 1 Ohio App.3d at 120-21.  Because Firestone has adequately pled its causes of action against Bristow, this motion for judgment on the pleadings is not well taken and must be denied.

### III.  Conclusion

For the reasons set forth above, the Court finds that Plaintiff Firestone has adequately pled its claims for relief against Defendant Bristow and accordingly DENIES Defendant's Motion for Judgment on the Pleadings.

IT IS SO ORDERED.

Dated: November 9, 2022

       *s/ Amanda M. Knapp*
       AMANDA M. KNAPP
       UNITED STATES MAGISTRATE JUDGE